Filed 8/2/13  In re Eduardo A. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re EDUARDO A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F066346 |
| Plaintiff and Respondent, | (Super. Ct. No. JJD065539) |
| v. | |
| EDUARDO A., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Rex A. Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Kane, J. and Detjen, J.

An amended juvenile delinquency petition charged minor, Eduardo A., with carrying a concealed dirk or dagger (count 1; Pen. Code, § 21310[1]), discharging a firearm at an inhabited dwelling (count 2; § 246), discharging a firearm at an occupied vehicle (count 3; § 246) and assault with a firearm (counts 4-7; § 245, subd. (a)(2)).  Counts 2 to 7 alleged the offenses were committed for the benefit of a criminal street gang (§ 186.22, subds. (b)(1)(B), (b)(4)(B)) and counts 4 to 7 alleged minor personally used a firearm in the commission of the offenses (§ 12022.5, subd. (a)).  The court later found counts 1, 4, 5, 6 and the special allegations to be true.  The court found counts 2, 3 and 7 not proved and dismissed the petition as to those counts.  At the disposition hearing, the court found minor not suitable for deferred entry of judgment, determined all of the offenses were felonies, calculated a maximum period of confinement of 25 years 4 months, declared minor a ward, removed him from his parents' custody, and placed him on probation under the supervision of the probation officer for out of home placement in the Youth Correctional Center Unit for 240 to 365 days.  Minor filed a timely notice of appeal.

The sole issue raised on appeal is minor's contention that the section 186.22 gang enhancement should be reversed because inadmissible expert testimony on minor's intent was received and minor was denied effective assistance of counsel because trial counsel did not object to or seek to exclude that expert testimony.  We conclude that if there was any error in admitting the expert testimony, it was harmless and therefore affirm.

Penal Code section 186.22, subd. (b)(1) provides, in relevant part, as follows:

> "[a]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows .…"

---

**1**     Unless otherwise indicated, all further statutory references are to the Penal Code.

This criminal street gang enhancement was found true by the trial court.

Visalia Police Officer Shane Logan testified as a gang expert. He familiarized himself with the incident of August 1, 2012, that occurred on the 1500 block of North Giddings by pulling the police reports and reviewing them. The two suspects were Sebastian B. and minor. Logan was then asked if he had an opinion after reviewing the matter as to whether the crime was committed for the benefit of or at the direction of or in association with a criminal street gang with the intent to promote, further or assist in criminal conduct by the gang. Logan answered affirmatively that he believed that "the crime was, in fact, to—well, did benefit the Norteno criminal street gang as a whole within the city of Visalia." He was asked if he thought it was a gang-related crime that Sebastian B. committed, to which he answered "Yes, I do." He was then asked whether his opinion was the same as to minor, to which he answered "Correct." Later, Logan was again asked the question as to whether he had an opinion as to whether "the crime was committed for the benefit of, at the direction of, or in association with [a] criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by the gang." His answer was "Yes." He was then asked "Is your answer yes to that specific question as to [minor]?" to which he answered "Yes." He was then asked if his answer was yes as to Sebastian B., to which he also answered "Yes." Trial counsel for minor did not object to this line of questioning or seek to strike any of the expert's opinions.

Relying on *People v. Killebrew* (2002) 103 Cal.App.4th 644 (*Killebrew*), minor argues that expert opinion testimony is not permitted to comment on whether a particular defendant actually had the specific intent to promote, further or assist criminal conduct. In *Killebrew*, the defendant was convicted of conspiracy to possess a handgun. The People's gang expert testified that each of the individuals in a caravan of three cars knew there was a gun in the Chevrolet and a gun in the Mazda, and jointly possessed the gun with everyone else in the three cars for mutual protection. (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1551 (*Gonzalez*), cited with approval in *People v. Vang* (2011) 52

3.

Cal.4th 1038, 1047, fn. 2 (*Vang*).) *Killebrew* found the expert's testimony on the intent and knowledge of the gang members inadmissible because such opinions did nothing more than inform the jury how the expert believed the case should be decided and was not like the generalized expert testimony on gang culture and habits sufficiently beyond common experience, which had been found admissible in other cases. (*Killebrew*, *supra*, 103 Cal.App.4th at pp. 652-659.) *Killebrew* does not preclude expert testimony from which a jury may infer the motive for a crime or the perpetrator's intent. *Killebrew* prohibits an expert from testifying to his or her own opinion of the knowledge or intent of a defendant on trial. (*Gonzalez*, *supra*, at p. 1551.)

In *Vang*, *supra*, 52 Cal.4th 1038, our California Supreme Court disapproved *Killebrew* to the extent that it condemned the use of hypothetical questions, because it "overlooked the critical difference between an expert's expressing an opinion in response to a hypothetical question and the expert's expressing an opinion about the defendants themselves." (*Id.* at p. 1049.) The *Vang* court acknowledged that, as a general rule, expert testimony should not be allowed regarding whether the specific defendants acted for a gang reason. (*Id.* at p. 1048.) However, the court also acknowledged that in some circumstances, expert testimony regarding specific defendants might be proper, although the question was not before the court in that case. (*Ibid.*, fn. 4.) Significantly, in *Vang*, the court upheld the admissibility of the expert opinion, because the expert gave an opinion that an assault committed in the manner described in a hypothetical would be gang-related and did not give an opinion on whether the defendants did commit an assault in that way and thus did not give an opinion on how the jury should decide the case. (*Id.* at p. 1049.) The court went on to approve the trial court's ruling and rationale as follows:

> "The trial court understood precisely the distinction between (1) not permitting the expert to opine that the particular defendants committed a crime for a gang purpose, and (2) permitting the expert to express his opinion in response to hypothetical questions. The court sustained an objection to a question regarding whether a particular defendant had

4.

knowledge of the gang activities. In sustaining the objection, it explained to the jury that 'the law doesn't allow the expert to come in and say exactly what somebody else's mind—what was in their mind. All of the evidence is presented to you for you to make that decision.' It only permitted the expert to give an opinion whether an assault would have had a gang purpose in response to hypothetical questions. The court acted correctly in this regard." (*Ibid*.)

In the instant case, Officer Logan's testimony was not given in response to a hypothetical. He testified that he reviewed the police reports about the subject crime and that in his opinion, Sebastian B. and minor committed the crime for the benefit of or at the direction of or in association with a criminal street gang with the intent to promote, further or assist in criminal conduct by the gang. He affirmed more than once that this was his opinion specifically as to each of the two suspects, and later he confirmed those opinions that both suspects committed the crimes for the benefit of the gang and with the specific intent to promote, further or assist in criminal conduct by the gang. The officer's opinions, inasmuch as they were directed specifically at minor and not couched in response to a hypothetical, violate the holdings and reasoning in *Killebrew* and *Vang*.

The People argue that the focus of the gang expert's testimony was based on explaining the basis for his opinion concerning general interactions between rival gangs and not based on minor's objective knowledge and intent at the time of the shooting. The expert's testimony belies this assertion. First, Officer Logan was not asked for these opinions in hypothetical questions that otherwise would be proper as explained in *Vang*, *supra*, 52 Cal.4th 1038. Second, the questions posed to Officer Logan specifically referenced the instant crime as described in the police reports and specifically identified minor and Sebastian B. as the two suspects. The prosecutor followed up by asking, "So you think it was a gang-related crime that Sebastian [B.] committed?" He answered affirmatively and the prosecutor then asked, "And your opinion is the same as to [minor]?" to which he answered "Correct." Thus, the questions and answers were specifically directed to the instant crime and to the two suspects, including minor, by

name.  Officer Logan testified that it was his opinion that the underlying crime was committed by both suspects for the benefit of the gang and with the specific intent to promote, further or assist in criminal conduct by the gang.  This clearly violated the principle that opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact, since the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt.  (*Vang*, *supra*, at p. 1048.)

Trial counsel for minor did not object to this opinion testimony.  Failure to object to the erroneous admission of evidence results in forfeiture.  (Evid. Code, § 353; *People v. Demetrulias* (2006) 39 Cal.4th 1, 22.)

Minor concedes that trial counsel did not preserve the objection below, but contends that this failure denied him his Sixth Amendment right to effective assistance of counsel.  (U.S. Const., 6th Amend.)  It is the defendant's burden to establish ineffective assistance of counsel by a preponderance of the evidence.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 218.)  To prevail on such a claim, an appellant must show two things.  First, that counsel's representation fell below an objective standard of reasonableness and, second, that but for counsel's deficient performance, it is reasonably probable the result of the proceeding would have been different.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-689, 693-694.)  A reviewing court is not required to first determine whether counsel's performance was deficient before examining prejudice.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.  (*Id.* at p. 697.)

We find that it is not reasonably probable that minor would have obtained a more favorable result had the improper expert testimony been timely objected to and ruled inadmissible.

The gang expert was qualified to and offered proper expert testimony that minor and Sebastian B. were active members of the Norteño street gang at the time of the shooting.  There was considerable evidence about both suspects' prior contacts with law

enforcement. Witnesses testified that one of the suspects attempted to fire the gun before handing it to the other suspect, who fired several shots at Sureño gang members and bystanders. Witnesses identified Sebastian B. as the attempted shooter and minor as the actual shooter. One witness testified that minor would walk by his house "mugging" and "talking a lot of stuff," including calling the witness a "scrap," which is a derogatory term for a rival gang member. At the time of his arrest, Sebastian B. was wearing a gray T-shirt and a Boston Red Sox hat with a red "B." Officer Logan testified that members of the subset "North Side Visa Boys" of the Norteño street gang often wear sports attire for the Boston Red Sox, and that Norteños refer to Sureños as "scraps." Moreover, Officer Logan testified, based on his review of law enforcement and probation department records and his own interaction with Sebastian B., that Sebastian was active with the North Side Visa Boys subset of the Norteño criminal street gang. As to minor, Officer Logan explained that he had prior personal contact with him and he reviewed and testified about minor's prior contacts with other law enforcement officers. While minor never admitted membership in the Norteño gang, he committed several crimes and often was found in the company of other documented Norteño members and associates. Officer Logan opined that minor was an active Norteño gang member based on his association with gang members, wearing gang-related clothing or attire, involvement in a gang-related crime and the fact that his mother identified him as a gang member.

A review of all of the evidence leads us to conclude that the failure of minor's trial counsel to object to the gang expert's opinion about minor's motives and intent in committing the underlying crime was not prejudicial.[2]

---

**2** We acknowledge the People's argument that had trial counsel objected to the form of the prosecution's questions of the gang expert, the prosecutor likely would have been able to reframe the questions in the form of acceptable and proper hypotheticals with the same general opinion being offered. The People posit that "[C]ounsel may have concluded that the risk of misuse of the expert's opinion was de minimus given the fact that this was a juvenile adjudication where the court served as the trier of fact. For these

## **DISPOSITION**

The judgment is affirmed.

---

reasons, counsel could have had a tactical reason not to object to the form of questioning or the expert's opinion testimony." Although somewhat speculative, this argument may have merit, but we find it unnecessary to decide it.